IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **HTI IP LLC** § | | |
|   **Plaintiff,** § | | |
| § | | |
| vs. § | | |
| § | **CASE NO. 6:09-CV-370** | |
| **DRIVEOK, INC., et al** § | **PATENT CASE** | |
| § | | |
|   **Defendants.** § | | |
| § | | |

**MEMORANDUM OPINION AND ORDER**

  Xirgo Technologies, LLC's Motion to Transfer to the Southern District of California (Docket No. 39) is before the Court. Having considered the parties' written submissions, the Court **GRANTS** the motion. The Court **TRANSFERS** this case to the Southern District of California. Further, the Court **DENIES** all other pending motions as moot.

**BACKGROUND**

  Plaintiffs HTI IP, LLC and NetworkFleet, Inc. accuse Defendants of infringing four of their United States Patents.[1] HTI's principal place of business is in Atlanta, Georgia. NetworkFleet's principal place of business is in San Diego, California, which is in the Southern District of California.

  Defendant Procon, Inc.'s[2] principal place of business is Knoxville, Tennessee. Defendant WebTech Wireless Inc. ("WebTech Canada") is a Canadian corporation with a principal place of

---

[1] Plaintiffs originally asserted five patents but have since dismissed one patent.

[2] Procon, Inc. replaced the originally named defendant DriveOK, Inc. in this suit.

business in Burnaby, British Columbia, Canada. Defendant WebTech Wireless USA Ltd.'s ("WebTech USA") principal place of business is in Blaine, Washington. Defendant Xirgo Technologies, LLC's principal place of business is in Camarillo, California, located in the Central District of California. Xirgo moves to transfer this case to the Southern District of California. Webtech Canada and Procon have joined in the motion.

## APPLICABLE LAW

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of

the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

***The Relative Ease of Access to Sources of Proof***

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345. However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333. 1336–37 (Fed. Cir. 2009).

*The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

*The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the

transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id*. (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

### *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

*The Administrative Difficulties Flowing from Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id*.

*The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

*The Familiarity of the Forum with the Law that Will Govern the Case* and *Avoidance of Unnecessary Problems of Conflict of Laws*

In the Court's experience, these factors are generally inapplicable in patent cases.

## ANALYSIS

*Whether the suit could have been filed in the Southern District of California*

The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have

been filed." *In re Volkswagen I*, 371 F.3d at 203. HTI disputes whether it could have brought suit in the Southern District of California. WebTech USA has challenged this Court's personal jurisdiction, and HTI contends that under WebTech USA's arguments the Southern District of California would also not have personal jurisdiction over WebTech USA.

WebTech USA is a wholly owned subsidiary of WebTech Canada. Edmonds Declaration ¶ 3, Docket No. 39-1 at 16. WebTech Canada's Chief Financial Officer, Scott Edmonds, submitted a declaration stating the WebTech Canada and WebTech USA have offered the accused products and services for sale in the Southern District of California. *Id*. at ¶ 10, Docket No. 39-1 at 17. HTI does not dispute this.

In a patent case, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). California's long-arm statute "allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Consititution." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); CAL. CIV. CODE P. § 410.10. Thus, the analysis of California's long-arm statute collapses into the federal due-process inquiry.

Due process requires an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *Int'l*

*Shoe*, 326 U.S. at 316. A court may exercise specific jurisdiction over a defendant where the cause of action "arises out of" or "relates to" the defendant's in state activity. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360-61 (Fed. Cir. 2006). This analysis requires courts to inquire "(1) whether the defendant has purposefully directed his activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008). When these conditions are satisfied the court must then determine whether its assertion of jurisdiction would "comport with fair play and substantial justice." *Id.* at 885. This factor should be applied "sparingly" and only if the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

WebTech USA admits through Edmonds that it has committed alleged acts of infringement in the Southern District of California and is approximately 1300 miles from the Southern District of California. Accordingly, the Southern District of California has specific jurisdiction over WebTech USA and exercising that jurisdiction over WebTech USA would not offend traditional notices of fair play and substantial justice. HTI could have brought this suit in the Southern District of California. Thus, the Court proceeds to the convenience analysis.

*Convenience Factors*

This suit's connections to Texas and the Eastern District of Texas are scant, and citizens of this District have no particularized interest in this case. No party is based in Texas, much less the Eastern District of Texas. At most, it appears that one inventor lives in Houston, Texas (Southern District of Texas), and NetworkFleet has an employee in Sachse, Texas (straddling the Eastern and

Northern Districts of Texas) and Austin, Texas (Western District of Texas). The parties' principal places of business, and presumably their documents and party witnesses, are located in Tennessee, Canada, Washington state, California, and Georgia. Additional witnesses have been identified in Washington, D.C. and Hawaii. In contrast, the Southern District of California has a strong connection to this case. It is the home forum of Plaintiff NetworkFleet and neighbors the home forum of Defendant Xirgo. As such, citizens of the Southern District of California have a strong particularized interest in this case.

While the Eastern District of Texas may be a central location for all the parties, the Court's convenience as a centralized location cannot overcome its very limited connection to this case. *See In re Genentech*, 566 F.3d at 1344.

## CONCLUSION

Accordingly, the Court **TRANSFERS** this case to the Southern District of California. All other pending motions are **DENIED** as moot.

**So ORDERED and SIGNED this 4th day of August, 2010.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**