# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HTI IP, LLC; NETWORK FLEET, INC., <br><br> Plaintiffs, <br> v. <br><br> WEBTECH WIRELESS INC.; WEBTECH WIRELESS USA LTD.; XIRGO TECHNOLOGIES, LLC; PROCON, INC., <br><br> Defendants. <br><br> AND ALL RELATED COUNTERCLAIMS. | Civil No. 10cv1783 DMS (NLS) <br><br> **ORDER REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 3** <br><br> [Doc. No. 178] |

Plaintiffs HTI IP, LLC and Networkfleet, Inc. (collectively, HTI) filed this patent infringement suit against Procon, Inc., Xirgo Technologies, LLC (Xirgo), and WebTech Wireless, Inc. and WebTech Wireless USA, LTD (collectively, WebTech). The four patents asserted relate to a wireless appliance placed in a car and a host computer that analyzes the data received from that appliance.

HTI and Xirgo filed this joint motion to resolve a third discovery dispute that relates to whether the stipulated protective order allows HTI to make and transport electronic copies of relevant portions of Xirgo's source code. HTI argues the protective order allows its expert to make temporary electronic copies of certain portions of Xirgo's source code and transport those electronic copies to later print out hard copies. Xirgo argues that the protective order does not allow making electronic copies of its source code solely for the purpose of printing out those portions for an expert's review.

For the following reasons, the court **GRANTS** the joint motion to determine the discovery dispute and determines the protective order requirements as follows.

**Relevant Facts.**

**1.     The Protective Order.**

The protective order sets out the parameters for an expert's review of an opposing party's source code. The relevant provisions provide:

> 21.     Source Code Material shall be produced as follows:
>
> (a)     Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be connected to (i) a printer, **or (ii) a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 21 (h and k) below.** Additionally, except as provided in paragraph 21(k) below, the stand-alone computer(s) containing Defendants' source code may only be located at the offices of Fulbright & Jaworski LLP in Los Angeles, CA (for so long as Fulbright & Jaworski L.L.P. is counsel in this civil action) or at Iron Mountain in San Diego, CA, and the stand-alone computer(s) containing Plaintiffs' source code may only be located at the San Diego offices of Paul, Hastings, Janofsky & Walker LLP. The Parties may stipulate to another location for the stand-alone computer as circumstances dictate;
> \*\*\*
> (g)     Except as set forth in paragraph 21(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the Producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically;
>
> (h)     The Receiving Party shall be permitted to make printouts and photocopies of Source Code Material, all of which shall be designated and clearly labeled "CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" and the Receiving Party shall maintain a log of all such files that are printed or photocopied;
> \*\*\*
> (k)     A Producing Party's Source Code Material may only be transported by the Receiving Party at the direction of a person authorized under paragraph 21(e) above [outside counsel and outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials] to another person authorized under paragraph 21(e) above, on paper or removable electronic media (e.g., a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express or other similarly reliable courier. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in paragraph 21 (j) above and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the Source Code Materials may be loaded onto a stand-alone computer.

Harris Decl., Ex. 1 (Protective Order) ¶ 21 (emphasis added).

///

HTI reads paragraph 21(a) and 21(h) together, which, it contends, allows its expert to either print out portions of the source code from the stand alone computer or make temporary electronic copies of the source code to be printed out later. Xirgo reads paragraph 21(a) in conjunction with 21(h) and 21(k), and argues that the downloading is only available for source code to be included in court filings or depositions.

**2. The Expert's Review.**

Xirgo agreed to make its source code available at the Iron Mountain facility in San Diego. HTI's expert, Stephen Gray, lives in San Diego and has been going to Iron Mountain since May 2010 to review Xirgo's source code. Xirgo provided a standalone computer that contained the source code. Xirgo did not, however, provide a printer, and says that Gray should have brought his own printer.[1] With no printer provided, Gray made temporary electronic copies of the relevant source code files for the purpose of printing them out on an off-site printer. He either made the printouts himself, or gave the flash drive to HTI's counsel to make the printouts. HTI asserts that after each printout, the electronic copy of the portion of source code was deleted. Also, Gray kept a log of the files that were printed.

It was not until November 18, 2010 that Xirgo told HTI that it believed Gray's copying of the source code files and transporting them off-site violated the protective order. After a meet and confer session, HTI believed that the parties resolved the issue and that Xirgo agreed to provide a printer. But when HTI requested access to Iron Mountain on December 6, 2010, Xirgo said the issue had not in fact been resolved, and that HTI would have to agree to additional demands before reviewing the source code. Namely, Xirgo requested that the review now take place at counsel's office in Los Angeles and that HTI confirm that it and its expert destructively deleted source code from the flash drives and did not load it onto a network.

**Order.**

The court has considered both parties' arguments in this dispute, and finds that while paragraph 21(a) appears to limit the practice of making electronic downloads to those purposes listed in paragraphs 21(h) and (k), the paragraph is ambiguous as to how to proceed if no printer is provided with the

---

[1] Gray has also reviewed the source code of the other two defendants. Both WebTech and Procon provided a printer with the standalone computer and source code. Printouts of WebTech's source code were also the subject of a previous discovery dispute. *See* Dkt. Nos. 150, 156.

standalone computer. Based on this ambiguity and the reasonableness of the expert needing to make copies of portions of source code for later review and analysis, the court finds that there is no justification for severe sanctions against either party. The court, therefore, **ORDERS**:

1. Xirgo's source code shall remain available for inspection at Iron Mountain in San Diego.

2. Xirgo, if it has not yet done so, shall provide a printer in conjunction with the standalone computer, to be used to make printouts of portions of its source code.

3. Counsel for HTI and Stephen Gray shall provide declarations to Xirgo by **January 18, 2011** confirming (a) the manner in which they destructively deleted source code from the flash drives; and (b) that the source code is not available on any network.

**IT IS SO ORDERED.**

DATED: January 11, 2011

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court